### FARRIS DAY v. THE STATE.

#### No. 768.  Decided December 21, 1910.

#### Rehearing Denied February 8, 1911.

**1.—Murder—Indictment—Signature of Foreman.**

The failure of the foreman of the grand jury to sign an indictment officially does not invalidate the same. The signature of the foreman of the grand jury, under Article 565, Code Criminal Procedure, is not a necessary prerequisite. Following Pinson v. State, 23 Texas, 579, and other cases.

**2.—Same—Evidence—Bill of Exceptions—Threats.**

Where, upon appeal from a conviction of murder, the bill of exceptions did not show that the deceased was absent at the time the defendant made the alleged threats, or that the same did not refer to deceased, the same could not be considered; besides, the testimony objected to was withdrawn, and was not of such harmful character as necessarily to operate to appellant's prejudice.

**3.—Same—Charge of Court—Manslaughter—Self-Defense.**

Upon trial of murder there was no error in the court's charge on manslaughter to instruct the jury that, if the acts and conduct of the deceased were not sufficient to justify defendant in acting in self-defense, it might never-

theless reduce the offense to manslaughter; the court having given an appropriate charge on self-defense upon the same state of facts.

**4.—Same—Charge of Court—Weight of Evidence.**

Where, upon trial of murder, the charge of the court submitted to the jury the issue as to whether certain testimony had been introduced in evidence and whether they should credit the same, referring to said evidence, the same was not on the weight of the evidence.

**5.—Same—Charge of Court—Weight of Evidence—Limiting Testimony.**

Where, upon trial of murder, the court referred to the testimony given by defendant on a former trial which was reproduced from the stenographer's notes, in order to limit the same to the question of impeachment, the same was not a charge on the weight of the evidence.

Appeal from the District Court of Red River. Tried below before Honorable Ben H. Denton.

Appeal from a conviction of murder in the second degree; penalty, six years imprisonment in the penitentiary.

The State's testimony showed substantially that the shooting occurred in a restaurant kept by the State's witness Guions; that defendant entered the restaurant and told deceased he had just been to the office of the telephone operator and told her that she and deceased could —— (using some obscene language); that deceased said to defendant that he had been throwing that up to him all evening, when defendant called him a liar; that thereupon deceased jumped from the counter and drew his barlow pocket-knife and defendant started to draw his pistol; that thereupon the parties in the restaurant separated them, and that after being released defendant again drew his pistol, saying to deceased's brother, who had tried to pacify him, "Now move, God damn you;" that deceased then told defendant to put up his pistol and they would have no more trouble, when defendant remarked, "You put up that God-damned knife;" that the deceased then took his knife out of his pocket and threw it over the counter and walked towards defendant and again told him to put up his pistol and let's have peace; that then defendant struck at deceased with the pistol, saying, "Keep out of here, God damn you;" that deceased dodged down and came up with a stool and struck at defendant with it, but simply hit the door facing, and the stool fell to the floor; that when deceased struck at defendant, defendant jumped back in the dining room and said that if any one did not want to be shot he had better get out of the way, and then immediately fired and shot the deceased who had just jumped back against the counter.

The State's testimony also showed that the difficulty grew out of the fact that the defendant and the deceased were paying their attentions to the young lady telephone operator, and that defendant resented the attentions of the deceased, and had abused both the yound lady and deceased on account of it.

The State's testimony further showed that the said brother of the deceased did not try to hit the defendant with a base-ball bat, and had none when he left the restaurant, as defendant and his witnesses testi-

fied he did. It was also shown by the State's testimony that on the same day, shortly before the homicide, defendant had shot in the ceiling of the restaurant and made threats that he would kill some one before night; that he was drinking; that after the homicide the defendant left the county.

Defendant's testimony related the beginning of the difficulty pretty much like that of the State's witnesses, but he testified that after he and deceased had been separated by Guions and the brother of the deceased, that the latter tried to get defendant to give up his pistol, which he refused; that said brother of deceased then turned defendant loose, saying, "I will see whether you will or not," and that when defendant approached the deceased, telling the latter to put up his knife, his said brother came at defendant with a base-ball bat like he wanted to hit defendant; that then defendant put his pistol down on him and told him to stop, and that he did stop, but deceased then picked up the stool and struck at defendant with it, and defendant put the pistol down on deceased and shot him; that just before he fired deceased had turned somewhat, and defendant believed at the time that the deceased was making for a gun which was kept in the restaurant. Defendant denied that he waited upon the young lady or that he had abused her, but that he simply called upon her at her office to have her explain the report that was circulated about defendant using improper language over the telephone. That defendant and deceased were intimate friends up to the time of the difficulty, etc.; that he shot in the ceiling of the restaurant in a spirit of hilarity and because the boys around him wanted him to, but had made no threats against any one; that he left the county for a while because he was told that his life was threatened by the father and brother of deceased; that deceased was quarrelsome and overbearing, etc.

*E. S. Chambers* and *B. B. Sturgeon* and *J. G. Dudley,* for appellant.—On the question of the failure of the foreman of the grand jury to sign the indictment: United States v. Petit, 114 U. S., 429; Parkinson v. United States, 121 U. S., 281; Article 5, Constitution of the United States; Article 1, section 10, Constitution of Texas.

On question of the court's charge quoting evidence: Givens v. State, 35 Texas Crim. Rep., 563; Wasson v. State, 3 Texas Crim. App., 474.

*John A. Mobley,* Assistant Attorney-General, for the State.—(Mr. Mobley was Assistant Attorney-General at the time this case was submitted, and filed a brief in which he cited authorities stated in opinion.)

RAMSEY, JUDGE.—The indictment in this case was filed in the District Court of Red River County on the 30th day of May, 1907, charging appellant with the murder of one Spencer Holt. The case came to trial on December 13th of last year, and resulted in a convic-

tion of murder in the second degree, assessing appellant's punishment at six years confinement in the State penitentiary.

The record is quite a voluminous one and contains, among other things, seventeen bills of exception. These, however, for the most part, are so qualified and explained by the court as to show no error, and are of such a character as not to require discussion. The case was submitted in a very lengthy charge in which the jury were instructed with reference to murder in the first degree, murder in the second degree, manslaughter and self-defense. The jury were also instructed with reference to the doctrine of provoking a difficulty, and numerous matters of testimony offered by way of impeachment was by the court duly and properly limited.

1. Before the case came on to trial appellant filed a motion reciting his citizenship of Texas and of the Union, and averring that he could not be prosecuted for murder except on a bill of indictment, and the indictment in this case was invalid in that same was not signed by the foreman of the grand jury as required by article 432 of our Code of Criminal Procedure either officially or in person, and has never been signed, but appears in blank. The motion alleges that one H. C. Bailey was foreman of the grand jury, and that he resided in Red River County, and that having been unsigned, that said indictment could not have been legally presented through the foreman without his signature thereto. The motion prayed the court that if said bill was presented, to require the said foreman of the grand jury, H. C. Bailey, to sign the said bill of indictment officially before he be required to plead to same, and on failure of said foreman to sign said indictment, that the same be abated. Article 432 of the Code of Criminal Procedure directs that the indictment shall be signed officially by the foreman of the grand jury. Upon examination, however, it will be seen that this article does not purport to name the essentials of an indictment, but that same is merely intended as an instruction to the officers as to what they are to do with reference to the preparation of indictments. This same article directs that the names of the witnesses shall be endorsed on the indictment. This provision has in many cases been held to be directory. Article 439 of the Code of Criminal Procedure does set out in detail the requisites of an indictment, and among other requirements there stated is the following provision: Sec. 9. "It (the indictment) shall be signed officially by the foreman of the grand jury." This article taken alone would seem to indicate that the indictment would be fatally defective if not so officially signed. It will be noted, however, that article 565 of the Code of Criminal Procedure directly refers to and expressly limits and controls so much of article 439 as is herein invoked.

Article 565, supra, is as follows: "Exceptions to the form of indictment or information may be taken for the following causes only: 1. That the indictment or information does not appear to have been presented in the proper court, as required by articles 439 or 466. 2.

The want of any other requisite or form prescribed by articles 439 and 466, except the want of the signature of the foreman of the grand jury, or in the case of an information, of the signature of the attorney representing the State."

It has, therefore, been held in this State, from a very early day, that the failure of the foreman of the grand jury to sign an indictment officially does not invalidate same. Pinson v. State, 23 Texas, 579; State v. Powell, 24 Texas, 135; Hanna v. State, 1 Texas Crim. App., 578; Campbell v. State, 8 Texas Crim. App., 84; Jones v. State, 10 Texas Crim. App., 552; Weaver v. State, 19 Texas Crim. App., 547; Robinson v. State, 24 Texas Crim. App., 4.

2. · The next matter of importance relates to the action of the court in respect to the testimony of one Cleve Guions. In order to make this matter· clearly understood, since the bill is very short, we copy it entire:

"Be it remembered, That on the trial of the above entitled cause, the State offered to prove by the witness Cleve Guions, that the defendant stated to him when he wanted to get his pistol, that he said he would kill some God-damned son-of-a-bitch before night, to which the counsel for the defendant objected, for the following reasons, viz.:

"We object to anything that was said generally without any specific remark concerning any one, and we object to anything he said generally, and the deceased was not present, and the remarks were not directed to any one, and the court overruled the objections and said witness answered; the defendant excepted to said ruling· and herewith tenders his bill of exceptions, and asks that the same be signed, sealed and made a part of the record in said cause, which is accordingly done.

"This testimony, if not admissible, was withdrawn, and the jury instructed not to consider it for any purpose whatever.

                                        "Ben H. Denton, Judge."

We think this bill is not in such shape as to support appellant's contention. In the first place, it is not shown in the bill that deceased was absent at the time the statement was made, nor is it shown in the bill that, tested with reference to other facts, that the threat did not refer to the deceased. We have uniformly held that the mere statement of facts as grounds of objection is not equivalent to showing that the matters stated as grounds of objection are indeed true. It will further be noted that the bill shows that the court overruled the objections, and that the witness answered. What his answer was does not clearly appear. It does appear what the offered proof of the State was. Whether the answer of the witness supported and coincided with this offered proof we are left to infer. We think clearly the bill is insufficient. Again, since the testimony was withdrawn, it was not of such harmful character as necessarily to operate to appellant's prejudice.

3. Complaint is made of the following paragraph of the court's charge:

"If you believe from the evidence that the defendant shot the deceased at the time and place alleged in the indictment, yet, if you further believe that just prior to, or at the time of the shooting, the defendant was assaulted with a stool, or a knife, or a base-ball bat, by deceased and his brother, or either of them, or was attacked by deceased and his brother Ivan Holt, or either of them, or both or either of them had made some demonstration as if about to attack him, and that such assault, or attack, or demonstration (if any) created in the mind of the defendant such a degree of anger, rage, sudden resentment or terror, as to render his mind incapable of cool reflection, and in such a state of mind he shot the deceased, then if you do not find him justifiable under the instructions given you, he would not be guilty of any higher grade of offense than manslaughter."

This is objected to for the reason that if, as claimed by counsel for appellant, appellant had been assaulted or attacked by deceased and his brother, or either of them, or if both or either of them had made a demonstration as if about to attack him, he would have the right to shoot in his own self-defense, and would not have been guilty of any grade of offense whatever, and the court was in error in instructing the jury that notwithstanding they found such an assault, or that his adversaries were attacking him, or made a demonstration upon him, that he would be guilty of no higher grade of offense than manslaughter, which they claim meant to the jury that, notwithstanding they had assaulted him or attacked him, yet if he did the shooting that it would not have been done in self-defense, and he would have been guilty of manslaughter. It will be noticed that this instruction was given with the qualifying clause that, under the conditions named in the charge, if the mind of appellant was aroused to a degree of anger, rage or sudden resentment such as to render it incapable of cool reflection, or if under instructions thereafter given they did not find appellant justifiable on self-defense, that he would be guilty of no higher grade of offense than manslaughter. This charge was immediately followed by a lengthy charge on self-defense in which, among other things, the jury were instructed as follows:

"If the defendant, just before the shot was fired, believed from the words, acts or conduct of the deceased and his brother, or either of them, that they, or either of them, were seeking to get possession of some weapon or instrument, and it reasonably appeared to the defendant that he was in danger of death or serious bodily injury from the deceased and his brother, or either of them, if they, or either one, did get possession of any such weapon or instrument, then the defendant would have the right to shoot and continue to shoot until such danger or apparent danger had ceased.

"Now, if you believe from the evidence that the defendant killed Spencer Holt, but you further believe that just prior to, or at the time of the shooting, said Spencer Holt and his brother, Ivan Holt, or either of them, had made or was making an unlawful attack upon the de-

fendant, or either one or both had done, or was doing some act or acts, which either alone or together with accompanying words or both or either of them, produced in the defendant's mind, as viewed from his standpoint, a reasonable apprehension of death or serious bodily injury at the hands of said Spencer Holt and his brother Ivan Holt, or either of them, and that defendant did such killing to protect himself from such danger or apparent danger, then such killing was in justifiable self-defense, and if you so find, or if you have a reasonable doubt as to whether such killing was in justifiable self-defense or not, you will acquit the defendant."

We have not infrequently held that it is proper for the court to charge on manslaughter under conditions quite similar to the case before us on the theory that, although the jury may not have believed that the acts and conduct of the deceased were sufficient to justify appellant in acting in self-defense either in respect to real or apparent danger, yet, nevertheless, his attitude or conduct might be such as to reduce the offense to manslaughter. See Swain v. State, 48 Texas Crim. Rep., 98. In this case, by this charge appellant was given the full benefit of his claim of self-defense, and an appropriate charge on manslaughter based on certain evidence which the jury might have accredited and believed to be sufficient to have so reduced his offense.

4. Complaint is made of the charge of the court in respect to the instruction with reference to the testimony of one Bryson to the effect that appellant told him that there was not a Holt by the name that had nerve enough to stand up before him with a knife, pistol or anything else. The objection is that the charge instructs the jury as a matter of fact that the witness Bryson testified substantially to this effect. It is claimed that this charge is on the weight of the testimony, and instructed the jury what the testimony is upon said issue, and invaded the province of the jury in this respect. This matter is contained in the thirty-fifth paragraph of the court's charge, which includes a number of impeaching matters. The particular paragraph is to this effect:

"And if you further believe that the State introduced the witness Ben Bryson, and he testified substantially that 'Farris Day told him that there was not a God-damned Holt by the name that had nerve enough to stand up before him with a knife or pistol or anything else.'"

It will thus be seen that the charge was submitted to the jury to ascertain whether such testimony had been introduced and whether they should credit the evidence therein referred to, as well as the weight they would give it. We attach no importance to the word "substantially." If it had been entirely omitted it would not have changed the sense of the instruction. After referring to and quoting literally much of this impeaching testimony, the court then charges the jury that the only purpose for which all of this testimony was offered by the State and admitted by the court, was that they might consider it for whatever

it was worth for the sole purpose of passing upon the credibility of the witness Farris Day, and that such testimony so introduced by the State could not be considered for any other purpose.

5. The next complaint refers to the same section of the court's charge, and relates to appellant's application for a continuance, made at the spring term, 1909, as well as certain testimony given by appellant on a former trial which was reproduced from the stenographer's notes and set out in the charge in detail by question and answer. It is urged that this is a charge on the weight of testimony, and tells the jury what the testimony was upon the former trial in the cause, and does not leave it to the jury to say whether or not such was the testimony. The charge on this last-mentioned matter is as follows: "And if you further believe that the State introduced before you the following testimony of the defendant at the former trials of this case, taken by the stenographer, which is substantially as follows:" This charge, properly construed, does not invade the province of the jury. In order to limit any impeaching testimony, it is indispensable that the substance or purport of same should be stated to the jury so that they may be advised of what it is that is to be limited by them, and unless it was definite enough to serve this office, the charge so limiting the testimony would be wholly worthless and a defendant in such case justly aggrieved.

In no other respect except those above stated is the charge of the court complained of. Considered altogether, it is a fair, adequate and unexceptional presentation of every issue arising on the trial of the case. As stated, we have not reviewed many of the questions raised on the appeal, though they have all been carefully considered. In the light of the court's explanation to the several bills of exception, the other matters relied on as grounds of reversal seem to us so clearly unavailable as not to require discussion.

Finding no error in the record, it is ordered that the judgment of conviction be and the same is hereby affirmed.

*Affirmed.*

McCord, Judge, absent.

ON REHEARING.

February 8, 1911.

PRENDERGAST, JUDGE.—The motion for rehearing in this case presents nothing which was not decided by the opinion originally delivered herein. It simply takes issue with the decision as made.

The record is quite lengthy, but we have carefully gone over the whole of it again on this motion for rehearing, and are satisfied with the original opinion herein. We believe that all of the questions were correctly decided thereby. It is therefore ordered that the motion for rehearing be overruled.

*Overruled.*